UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ETERNAL WORD TELEVISION NETWORK, INC. <br>         *Plaintiff,* <br><br> v. <br><br> KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> HILDA SOLIS, Secretary of the United States Department of Labor, <br><br> UNITED STATES DEPARTMENT OF LABOR, <br><br> TIMOTHY GEITHNER, Secretary of the United States Department of the Treasury, and <br><br> UNITED STATES DEPARTMENT OF THE TREASURY, <br>         *Defendants.* | 2:12-CV-___-___-___ <br><br><br> **COMPLAINT** |

## COMPLAINT

Comes now Plaintiff Eternal Word Television Network, Inc., by and through its attorneys, and states as follows:

### NATURE OF THE ACTION

1.      This is a challenge to regulations issued under the 2010 Affordable Care Act that force the Plaintiff—along with a multitude of other religious organizations—to violate their deepest religious beliefs.

2.      In 1981, Mother M. Angelica, a Catholic nun of the Poor Clares of Perpetual Adoration order, founded the Eternal Word Television Network (EWTN) on the property of Our Lady of Angels Monastery in Irondale, Alabama.  EWTN has grown to become the largest Catholic media network in the world, transmitting television programming on eight different video, radio, and internet services 24 hours a day to more than 217 million homes in 144 countries and territories.

3.      EWTN airs family and religious programming that present reliable statements of Catholic belief and practice in keeping with the authoritative teachings of the Catholic Church. EWTN's sincere religious beliefs forbid it from participating in, paying for, training others to engage in, or otherwise supporting contraception, sterilization, or abortion.  EWTN is one of many American religious organizations that hold these beliefs.

4.      Based on the teachings of the Catholic Church, and its own deeply held beliefs, EWTN does not believe that contraception, sterilization, or abortion are properly understood to constitute medicine, health care, or a means of providing for the well being of persons.  Indeed,

1

EWTN believes these procedures involve gravely immoral practices, including the intentional destruction of innocent human life.

5.      With full knowledge of these beliefs, Defendants[1] issued an administrative rule ("the Mandate") that not only forces EWTN to treat contraception, sterilization, abortion, and related education and counseling as health care, but that also subverts the expression of EWTN's religious beliefs, and the beliefs of millions of other Americans, by forcing EWTN to fund, promote, and assist others to acquire services which EWTN believes involve gravely immoral practices, including the destruction of innocent human life.

6.      The Mandate unconstitutionally coerces EWTN to violate its deeply-held religious beliefs under threat of heavy fines and penalties.  The Mandate also forces EWTN to fund government-dictated speech that is directly at odds with its own speech and religious teachings. Having to pay a fine to the taxing authorities for the privilege of practicing one's religion or controlling one's own speech is un-American, unprecedented, and flagrantly unconstitutional.

7.      The Defendants' refusal to accommodate conscience is also highly selective.  A patchwork of seemingly arbitrary exemptions from the Affordable Care Act announces that Defendants do not believe every insurance plan in the country need cover these services.  For instance, Defendants have issued thousands of waivers from the Affordable Care Act altogether for groups, such as many large corporations, purely for reasons of commercial convenience. Other exemptions have been awarded based on how old a plan is or how large an employer is. Missing, however, is any exemption for employers whose religious consciences instruct them that certain mandated services are ethically repugnant.  In other words, the Defendants' pattern

---

[1]      All defendants are referred to collectively as "Defendants" unless context requires greater specificity.

2

of exemptions reveals a massive blind spot for groups exercising their fundamental First Amendment freedoms.

8.     The Defendants' actions therefore violate EWTN's right to freedom of religion, as secured by the First Amendment to the United States Constitution and by a civil rights statute, the Religious Freedom Restoration Act (RFRA).

9.     The Defendants' actions also violate EWTN's right to the freedom of speech, as secured by the First Amendment to the United States Constitution.

10.     Furthermore, the Mandate is also illegal because it was imposed by Defendants without prior notice or sufficient time for public comment, and otherwise violates the Administrative Procedure Act, 5 U.S.C. § 553.

11.     Had EWTN's religious beliefs been obscure or unknown, the Defendants' actions might have been an accident.  But because the Defendants acted with full knowledge of those beliefs, and because they arbitrarily exempt some plans for a wide range of reasons other than religious conviction, the Mandate can be interpreted as nothing other than a deliberate attack by the Defendants on the religious beliefs of EWTN and millions of other Americans.  The Defendants have, in sum, intentionally used government power to force religious groups to believe something about the mandated services manifestly contrary to their own religious convictions, and then to act on that coerced belief.  EWTN seeks declaratory and injunctive relief to protect against this attack.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1361. This action arises under the Constitution and laws of the United States.  This Court has

jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 2000bb-1.

13.     Venue lies in this district pursuant to 28 U.S.C. § 1391(e).  EWTN is located in this district.

### IDENTIFICATION OF PARTIES

14.     Plaintiff EWTN is a non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and is principally located in Jefferson County, Alabama.

15.     Defendants are appointed officials of the United States government and United States governmental agencies responsible for issuing the Mandate.

16.     Defendant Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services (HHS). In this capacity, she has responsibility for the operation and management of HHS.  Sebelius is sued in her official capacity only.

17.     Defendant Hilda Solis is the Secretary of the United States Department of Labor. In this capacity, she has responsibility for the operation and management of the Department of Labor. Solis is sued in her official capacity only.

18.     Defendant Department of Labor is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

19.     Defendant Timothy Geithner is the Secretary of the Department of the Treasury. In this capacity, he has responsibility for the operation and management of the Department. Geithner is sued in his official capacity only.

20.     Defendant Department of Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

FACTUAL ALLEGATIONS

I.      **EWTN's Religious Beliefs and Practices Related to Contraception, Sterilization, and Abortion.**

21.     In 1981, Mother M. Angelica, a cloistered nun of the Poor Clares of Perpetual Adoration order, founded EWTN on the property of Our Lady of Angels Monastery in Irondale, Alabama.  Since then, EWTN has grown to become the largest Catholic media network in the world, transmitting programming 24 hours a day in English and Spanish to more than 217 million homes in 144 countries and territories on more than 4,600 multichannel video programming distribution systems, two distinct 24 hour radio services broadcast worldwide on shortwave radio direct over internet, and through more than 175 affiliated broadcast stations in the United States as well as other communications media, such as its principal website which receives about 2 million visits per month.

22.     EWTN airs family and religious programming from a Catholic point of view that presents the teachings of the Catholic faith as defined by the Magisterium (teaching authority) of the Catholic Church.  Additionally, it provides spiritual devotions from Catholic religious practice, and airs daily live Masses and prayers.  Providing more than 80% original programming, EWTN offers talk shows, children's animation, teaching series, documentaries, and live coverage of Catholic Church events.

23.     A deep devotion to the Catholic faith is central to EWTN's mission.  In the network's own words:

> Eternal Word Television Network is dedicated to the advancement of truth as defined by the Magisterium of the Roman Catholic Church. The mission of the Eternal Word Television Network is to serve the orthodox belief and teaching of the Church as proclaimed by the Supreme Pontiff and his predecessors.  The goal of the Eternal Word Television Network is to provide the means by which the various organizations within the Church will have a nation-wide vehicle of expression.  This will be provided for them without charge as long as their spirituality remains within the theological context of Mother Church.  This is best evidenced by the acceptance of the Dogmas, Rules and Regulations of the Church in all matters, but especially as they relate to the topics on which their television presentation is based.  As the Eternal Word Television Network exists to provide a media for orthodox endeavors, this mission statement should be viewed as the basis of or foundation for this essential spiritual growth ministry, not as an attempt to censor any organization or individual….

Indeed, above and beyond EWTN's religious programming, the network's religious centers themselves are visited daily by pilgrims who travel to worship at the EWTN chapel in Irondale, Alabama, or to visit the beautiful Shrine of the Most Blessed Sacrament in nearby Hanceville, Alabama.

24.     EWTN thus holds and actively professes religious beliefs that include traditional Christian teachings on the sanctity of life.  It believes and teaches that each human being bears the image and likeness of God, and therefore that all human life is sacred and precious, from the moment of conception.  EWTN therefore believes and teaches that abortion ends a human life and is a grave sin.

25.     EWTN's religious beliefs also include traditional Christian teaching on the nature and purpose of human sexuality.  In particular, EWTN believes, in accordance with Pope Paul VI's 1968 encyclical *Humanae Vitae*, that human sexuality has two primary purposes: to "most closely unit[e] husband and wife" and "for the generation of new lives."  Accordingly, EWTN believes and actively professes, with the Catholic Church, that "[t]o use this divine gift destroying, even if only partially, its meaning and its purpose is to contradict the nature both of man and of woman and of their most intimate relationship, and therefore it is to contradict also

the plan of God and His Will."  Therefore, EWTN believes and teaches that "any action which either before, at the moment of, or after sexual intercourse, is specifically intended to prevent procreation, whether as an end or as a means"—including contraception and sterilization—is a grave sin.

26.     Furthermore, EWTN subscribes to authoritative Catholic teaching about the proper nature and aims of health care and medical treatment.  For instance, EWTN believes, in accordance with Pope John Paul II's 1995 encyclical *Evangelium Vitae*, that "'[c]ausing death' can never be considered a form of medical treatment," but rather "runs completely counter to the health-care profession, which is meant to be an impassioned and unflinching affirmation of life."

27.     EWTN has approximately 340 employees.

28.     As part of its commitment to Catholic social teaching, EWTN promotes the well-being and health of its employees.  In furtherance of these beliefs, EWTN has striven over the years to provide employee health coverage superior to coverage generally available in the Alabama market.

29.     Moreover, as part of its religious commitment to the authoritative teachings of the Catholic Church, EWTN ensures that its insurance policies do not cover drugs, devices, services or procedures inconsistent with its faith.  In particular, EWTN has taken great pains through the years to ensure that its insurance plans do not cover sterilization, contraception, or abortion.

30.     EWTN cannot provide health care insurance covering artificial contraception, sterilization, or abortion, or related education and counseling, without violating its deeply held religious beliefs.

31.    EWTN cannot provide information or guidance to its employees about other locations at which they can access artificial contraception, sterilization, abortion, or related education and counseling, without violating its deeply held religious beliefs.

32.    EWTN's plan year will begin on July 1, 2012.

33.    Furthermore, EWTN exists on donations from the public.  EWTN does not generate revenue from carriage fees and advertising, and indeed prohibits any form of commercial advertising on its television services.  Donors who give to EWTN do so with an understanding of EWTN's mission and with the assurance that EWTN will continue to adhere to, disseminate, and report reliable Catholic teachings on morality and practices, as its Mission Statement has declared since its inception.

34.    EWTN cannot use donated funds for purposes known to be morally repugnant to its donors and in ways that violate the implicit trust of the purpose of their donations.

## II.    The Affordable Care Act

35.    In March 2010, Congress passed, and President Obama signed into law, the Patient Protection and Affordable Care Act, Pub. L. 111-148 (March 23, 2010), and the Health Care and Education Reconciliation Act, Pub. L. 111-152 (March 30, 2010), collectively known as the "Affordable Care Act."

36.    The Affordable Care Act regulates the national health insurance market by directly regulating "group health plans" and "health insurance issuers."

37.    The Act does not apply equally to all insurers.

38.    The Act does not apply equally to all individuals.

39.     The Act does not apply its fine provisions for failure to offer employer-sponsored insurance to employers with fewer than 50 employees, not counting seasonal workers. 26 U.S.C. § 4980H(c)(2)(A).

40.     According to the United States census, more than 20 million individuals are employed by firms with fewer than 20 employees. http://www.census.gov/econ/smallbus.html.

41.     Certain provisions of the Act do not apply equally to members of certain religious groups. *See, e.g.*, 26 U.S.C. § 5000A(d)(2)(a)(i) and (ii) (individual mandate does not apply to members of "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds); 26 U.S.C. § 5000A(d)(2)(b)(ii) (individual mandate does not apply to members of "health care sharing ministry" that meets certain criteria).

42.     The Act's preventive care requirements do not apply to employers who provide so-called "grandfathered" health care plans.

43.     Employers who follow HHS guidelines may continue to use grandfathered plans indefinitely.

44.     HHS has predicted that a majority of large employers, employing more than 50 million Americans, will continue to use grandfathered plans through at least 2014, and that a third of small employers with between 50 and 100 employees may do likewise. http://www.healthcare.gov/news/factsheets/2010/06/keeping-the-health-plan-you-have-grandfathered.html.

45.     The Act is not generally applicable because it provides for numerous exemptions from its rules.

46.     The Act is not neutral because some groups, both secular and religious, enjoy exemptions from the law, while certain religious groups do not.

47.     The Act creates a system of individualized exemptions.

48.     The Department of Health and Human Services has the authority under the Act to grant compliance waivers ("HHS waivers") to employers and other health insurance plan issuers.

49.     HHS waivers release employers and other plan issuers from complying with the provisions of the Act.

50.     HHS decides whether to grant waivers based on individualized waiver requests from particular employers and other health insurance plan issuers.

51.     Upon information and belief, more than a thousand HHS waivers have been granted.

52.     The Act is not neutral because some secular and religious groups have received statutory exceptions while other religious groups have not.

53.     The Act is not neutral because some secular and religious groups have received HHS waivers while other religious groups have not.

54.     The Act is not generally applicable because Defendants have granted numerous waivers from complying with its requirements.

55.     The Act is not generally applicable because it does not apply equally to all individuals and plan issuers.

56.     Defendants' waiver practices create a system of individualized exemptions.

III.    **The Preventive Care Mandate**

57.     One of the provisions of the Affordable Care Act mandates that health plans "provide coverage for and shall not impose any cost sharing requirements for . . . with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration" and directs the Secretary of

Health and Human Services to determine what would constitute "preventative care" under the mandate.  42 U.S.C § 300gg–13(a)(4).

58.    On July 19, 2010, HHS, along with the Department of Treasury and the Department of Labor, published an interim final rule under the Affordable Care Act.  75 Fed. Reg. 41726 (2010).  The interim final rule required providers of group health insurance to cover preventive care for women as provided in guidelines to be published by the Health Resources and Services Administration at a later date.  75 Fed. Reg. 41759 (2010).

59.    HHS accepted public comments to the 2010 interim final rule until September 17, 2010.  A number of groups filed comments warning of the potential conscience implications of requiring religious individuals and groups to pay for certain kinds of health care, including contraception, sterilization, and abortion.

60.    HHS directed a private health policy organization, the Institute of Medicine ("IOM"), to suggest a list of recommended guidelines describing which drugs, procedures, and services should be covered by all health plans as preventative care for women.  See http://www.hrsa.gov/womensguidelines.

61.    In developing its guidelines, IOM invited a select number of groups to make presentations on the preventive care that should be mandated by all health plans. These were the Guttmacher Institute, the American Congress of Obstetricians and Gynecologists (ACOG), John Santelli, the National Women's Law Center, National Women's Health Network, Planned Parenthood Federation of America and Sara Rosenbaum.

62.    No religious groups or other groups that oppose government-mandated coverage of contraception, sterilization, abortion, and related education and counseling were among the invited presenters.

63.     One year after the first interim final rule was published, on July 19, 2011, the IOM published its recommendations. It recommended that the preventative services include sterilization procedures and "All Food and Drug Administration approved contraceptive methods [and] sterilization procedures." Institute of Medicine, Clinical Preventive Services for Women: Closing the Gaps (July 19, 2011).

64.     FDA-approved contraceptive methods include birth-control pills; prescription contraceptive devices, including IUDs; Plan B, also known as the "morning-after pill"; and ulipristal, also known as "ella" or the "week-after pill"; and other drugs, devices, and procedures.

65.     Thirteen days later, on August 1, 2011, without notice of rulemaking or opportunity for public comment, HHS, the Department of Labor, and the Department of Treasury adopted the IOM recommendations in full and promulgated an interim final rule ("the Mandate"), which requires that all "group health plan[s] and . . . health insurance issuer[s] offering group or individual health insurance coverage" provide all FDA-approved contraceptive methods and sterilization procedures. 76 Fed. Reg. 46621 (published Aug. 3, 2011); 45 C.F.R. § 147.130. On the same day HRSA issued guidelines adopting the IOM recommendations. http://www.hrsa.gov/womensguidelines.

66.     The Mandate also requires group health care plans and issuers to provide education and counseling for all women beneficiaries with reproductive capacity.

67.     The Mandate went into effect immediately as an "interim final rule."

68.     HHS did not take into account the concerns of religious organizations in the comments submitted before the Mandate was issued.

69.     Instead the Mandate was unresponsive to the concerns stated in the comments submitted by religious organizations.

70.     When it issued the Mandate, HHS requested comments from the public by September 30th and indicated that comments would be available online.

71.     Upon information and belief, over 100,000 comments were submitted against the Mandate.

72.     On October 5, 2011, six days after the comment period ended, Defendant Sebelius gave a speech at a fundraiser for NARAL Pro-Choice America.  She told the assembled crowd that "we are in a war." She did not state whom she and NARAL Pro-Choice America were warring against.

73.     The Mandate fails to take into account the statutory and constitutional conscience rights of religious organizations like EWTN which have been pointed out in comments.

74.     The Mandate requires that EWTN provide coverage for contraception, sterilization, abortion, and related education and counseling against its conscience in a manner that is contrary to law.

75.     The Mandate constitutes government-imposed pressure and coercion on EWTN to change or violate its religious beliefs.

76.     The Mandate exposes EWTN to substantial fines for refusal to change or violate its religious beliefs.

77.     The Mandate imposes a burden on EWTN's employee recruitment efforts by creating uncertainty as to whether EWTN will be able to offer health insurance beyond 2012.

78.     The Mandate places EWTN at a competitive disadvantage in its efforts to recruit and retain employees.

79.     The Mandate forces EWTN to provide contraception, sterilization, and some abortifacient drugs in violation of EWTN's religious beliefs that doing so is gravely immoral and, in certain cases, equivalent to assisting another to destroy innocent human life.

80.     The Mandate forces EWTN to provide emergency contraception in violation of its religious beliefs that this is equivalent to assisting another to destroy innocent human life.

81.     EWTN has a sincere religious objection to providing coverage for emergency contraceptive drugs such as Plan B and ella since it believes those drugs could prevent a human embryo, which they understand to include a fertilized egg before it implants in the uterus, from implanting in the wall of the uterus, causing the death of a person.

82.     EWTN considers the prevention by artificial means of the implantation of a human embryo to be an abortion.

83.     EWTN believes that Plan B and ella can cause the death of the embryo, which is a person.

84.     Plan B can prevent the implantation of a human embryo in the wall of the uterus.

85.     Ella can prevent the implantation of a human embryo in the wall of the uterus.

86.     Plan B and ella can cause the death of the embryo.

87.     The use of artificial means to prevent the implantation of a human embryo in the wall of the uterus constitutes an "abortion" as that term is used in federal law.

88.     The use of artificial means to cause the death of a human embryo constitutes an "abortion" as that term is used in federal law.

89.     The Mandate forces EWTN to provide emergency contraception, including Plan B and ella, free of charge, regardless of the ability of insured persons to obtain these drugs from other sources.

90.     The Mandate forces EWTN to fund education and counseling concerning contraception, sterilization, and abortion that directly conflicts with EWTN's religious beliefs and teachings.

91.     EWTN could not terminate its employees from health insurance coverage without violating its religious duty to provide for the health and well-being of its employees. Additionally, employees would be unable to attain similar coverage in the market as it exists today.

92.     The Mandate forces EWTN to choose among violating its religious beliefs, incurring substantial fines, or terminating its employee health insurance coverage.

93.     Providing counseling and education about contraceptives, sterilization, and abortion directly undermines and subverts the explicit messages and speech of EWTN.

94.     Group health plans and issuers will be subject to the Mandate starting with the first insurance plan year that begins on or after August 1, 2012.

95.     EWTN has already had to devote significant institutional resources, including both staff time and funds, to determining how to respond to the Mandate. EWTN anticipates continuing to make such expenditures of time and money up until the time that the Mandate goes into effect.

## IV.    The Narrow and Discretionary Religious Exemption

96.     The Mandate indicates that that the Health Resources and Services Administration ("HRSA") "may" grant religious exemptions to certain religious employers.   45 C.F.R. § 147.130(a)(iv)(A).

97.     The Mandate allows HRSA to grant exemptions for "religious employers" who "meet[ ] all of the following criteria: (1) The inculcation of religious values is the purpose of the

organization. (2) The organization primarily employs persons who share the religious tenets of the organization. (3) The organization serves primarily persons who share the religious tenets of the organization. (4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended." 45 C.F.R. § 147.130(a)(iv)(B).

98.     The Mandate imposes no constraint on HRSA's discretion to grant exemptions to some, all, or none of the organizations meeting the Mandate's definition of "religious employers."

99.     HHS stated that it based the exemption on comments on the 2010 interim final rule. 76 Fed. Reg. 46621.

100.    Most religious organizations, including EWTN, have more than one purpose.

101.    For most religious organizations, including EWTN, the inculcation of religious values is only one purpose among others.

102.    Many religious organizations, including EWTN, employ many persons who do not share the religious organization's beliefs.

103.    Many religious organizations, including EWTN, serve many persons who do not share the religious tenets of the religious organization.

104.    EWTN reasonably expects that it will be subject to the Mandate despite the existence of the exemption.

105.    EWTN has no conscientious objection to providing preventive services such as mammograms.

106.    On January 20, 2012, Defendant Sebelius announced that there would be no change to the religious exemption.  She added that "[n]onprofit employers who, based on religious

beliefs, do not currently provide contraceptive coverage in their insurance plan, will be provided an additional year, until August 1, 2013, to comply with the new law," on the condition that those employers certify they qualify for the extension.  At the same time, however, Sebelius announced that HHS "intend[s] to require employers that do not offer coverage of contraceptive services to provide notice to employees, which will also state that contraceptive services are available at sites such as community health centers, public clinics, and hospitals with income-based support."  *See* Statement by U.S. Department of Health and Human Services Secretary Kathleen Sebelius, *available at* http://www.hhs.gov/news/press/2012pres/01/20120120a.html (last visited February 7, 2012).  To date, Defendant HHS has not released any official rule implementing either the one-year extension or the additional forced-speech requirement.

107.    Regardless of the precise date on which EWTN will have to comply with the Mandate, EWTN cannot separately violate Church teaching by providing information and guidance to its employees about where to obtain these services.

### CLAIMS

### COUNT I
### Violation of the Religious Freedom Restoration Act

108.    EWTN incorporates by reference all preceding paragraphs.

109.    EWTN's sincerely held religious beliefs prohibit it from providing coverage for contraception, sterilization, abortion, or related education and counseling. EWTN's compliance with these beliefs is a religious exercise.

110.    The Mandate creates government-imposed coercive pressure on EWTN to change or violate its religious beliefs.

111.    The Mandate chills EWTN's religious exercise.

112.    The Mandate exposes EWTN to substantial fines for its religious exercise.

113.    The Mandate exposes EWTN to substantial competitive disadvantages, in that it will no longer be permitted to offer health insurance.

114.    The Mandate imposes a substantial burden on EWTN's religious exercise.

115.    The Mandate furthers no compelling governmental interest.

116.    The Mandate is not narrowly tailored to any compelling governmental interest.

117.    The Mandate is not the least restrictive means of furthering Defendants' stated interests.

118.    The Mandate and Defendants' threatened enforcement of the Mandate violate EWTN's rights secured to it by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq.

119.    Absent injunctive and declaratory relief against the Defendants, EWTN has been and will continue to be harmed.

### COUNT II
### Violation of the First Amendment to the United States Constitution
### Free Exercise Clause
### *The Mandate is neither neutral nor generally applicable*

120.    EWTN incorporates by reference all preceding paragraphs.

121.    EWTN's sincerely held religious beliefs prohibit it from providing coverage for contraception, sterilization, abortion, or related education and counseling.  EWTN's compliance with these beliefs is a religious exercise.

122.    Neither the Affordable Care Act nor the Mandate is neutral.

123.    Neither the Affordable Care Act nor the Mandate is generally applicable.

124.    Defendants have created categorical exemptions and individualized exemptions to the Mandate.

125.    The Mandate furthers no compelling governmental interest.

126.    The Mandate is not the least restrictive means of furthering Defendants' stated interests.

127.    The Mandate creates government-imposed coercive pressure on EWTN to change or violate its religious beliefs.

128.    The Mandate chills EWTN's religious exercise.

129.    The Mandate exposes EWTN to substantial fines for its religious exercise.

130.    The Mandate exposes EWTN to substantial competitive disadvantages, in that it will no longer be permitted to offer health insurance.

131.    The Mandate imposes a substantial burden on EWTN's religious exercise.

132.    The Mandate is not narrowly tailored to any compelling governmental interest.

133.    The Mandate and Defendants' threatened enforcement of the Mandate violate EWTN's rights secured to it by the Free Exercise Clause of the First Amendment to the United States Constitution.

134.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

### COUNT III
### Violation of the First Amendment to the United States Constitution
### Free Exercise Clause
### *The Mandate intentionally discriminates*

135.    EWTN incorporates by reference all preceding paragraphs.

136.    EWTN's sincerely held religious beliefs prohibit it from providing coverage for contraception, sterilization, abortion, or related education and counseling.  EWTN's compliance with these beliefs is a religious exercise.

137.    Despite being informed in detail of these beliefs beforehand, Defendants designed the Mandate and the religious exemption to the Mandate in a way that made it impossible for EWTN to comply with its religious beliefs.

138.    Defendants promulgated both the Mandate and the religious exemption to the Mandate in order to suppress the religious exercise of EWTN and others.

139.    The Mandate and Defendants' threatened enforcement of the Mandate thus violate EWTN's rights secured to it by the Free Exercise Clause of the First Amendment of the United States Constitution.

140.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

**COUNT IV**
**Violation of the First Amendment to the United States Constitution**
**Free Exercise Clause**
***The Mandate discriminates among religions***

141.    EWTN incorporates by reference all preceding paragraphs.

142.    By design, Defendants imposed the Mandate on some religious organizations but not on others, resulting in discrimination among religions.

143.    The Mandate vests HRSA with unbridled discretion in deciding whether to allow exemptions to some, all, or no organizations meeting the definition of "religious employers."

144.    The Mandate and Defendants' threatened enforcement of the Mandate thus violate EWTN's rights secured to it by the Free Exercise Clause of the First Amendment of the United States Constitution.

145.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

### COUNT V
### Violation of the First Amendment to the United States Constitution
### Establishment Clause
### *The Mandate prefers certain denominations over others*

146.    EWTN incorporates by reference all preceding paragraphs.

147.    By design, defendants imposed the Mandate on some religious organizations but not on others, resulting in a selective burden on EWTN.

148.    The Mandate vests HRSA with unbridled discretion in deciding whether to allow exemptions to some, all, or no organizations meeting the definition of "religious employers."

149.    The Mandate and Defendants' threatened enforcement of the Mandate therefore violate EWTN's rights secured to it by the Establishment Clause of the First Amendment to the United States Constitution.

150.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

### COUNT VI
### Violation of the First Amendment to the United States Constitution
### Freedom of Speech
### *Compelled Speech*

151.    EWTN incorporates by reference all preceding paragraphs.

152.    EWTN teaches that contraception, sterilization, and abortion violate its religious beliefs.

153.    The Mandate would compel EWTN to subsidize activities that EWTN teaches are violations of the College's religious beliefs.

154.    The Mandate would compel EWTN to provide education and counseling related to contraception, sterilization, and abortion.

155.    Defendants' actions thus violate EWTN's right to be free from compelled speech as secured to it by the First Amendment of the United States Constitution.

156.    The Mandate's compelled speech requirement is not narrowly tailored to a compelling governmental interest.

157.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

### COUNT VII
### Violation of the First Amendment to the United States Constitution
### Freedom of Speech
### *Expressive Association*

158.    EWTN incorporates by reference all preceding paragraphs.

159.    EWTN teaches that contraception, sterilization, and abortion violate its religious beliefs.

160.    The Mandate would compel EWTN to subsidize activities that EWTN teaches are violations of EWTN religious beliefs.

161.    The Mandate would compel EWTN to provide education and counseling related to contraception, sterilization, and abortion.

162.    Defendants' actions thus violate EWTN's right of expressive association as secured to it by the First Amendment of the United States Constitution.

163.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

### COUNT VIII
### Violation of the First Amendment to the United States Constitution
### Free Exercise Clause and Freedom of Speech
### *Unbridled Discretion*

164.    EWTN incorporates by reference all preceding paragraphs.

165.     By stating that HRSA "may" grant an exemption to certain religious groups, the Mandate vests HRSA with unbridled discretion over which organizations can have its First Amendment interests accommodated.

166.     The Mandate vests HRSA with unbridled discretion to determine whether a religious organization such as EWTN "primarily" serves and employs members of the same faith as the organization.

167.     Defendants' actions therefore violate EWTN's right not to be subjected to a system of unbridled discretion when engaging in speech or when engaging in religious exercise, as secured to it by the First Amendment of the United States Constitution.

168.     Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

**COUNT IX**
**Violation of the Administrative Procedure Act**
*Lack of Good Cause*

169.     EWTN incorporates by reference all preceding paragraphs.

170.     Defendants' stated reasons that public comments were unnecessary, impractical, and opposed to the public interest are false and insufficient, and do not constitute 'good cause.'

171.     Without proper notice and opportunity for public comment, Defendants were unable to take into account the full implications of the regulations by completing a meaningful "consideration of the relevant matter presented."  Defendants did not consider or respond to the voluminous comments they received in opposition to the interim final rule.

172.     Therefore, Defendants have taken agency action not in observance with procedures required by law, and EWTN is entitled to relief pursuant to 5 U.S.C. § 706(2)(D).

173.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

## COUNT X
### Violation of the Administrative Procedure Act
### *Arbitrary and Capricious Action*

174.    EWTN incorporates by reference all preceding paragraphs.

175.    In promulgating the Mandate, Defendants failed to consider the constitutional and statutory implications of the mandate on EWTN and similar organizations.

176.    Defendants' explanation for its decision not to exempt EWTN and similar religious organizations from the Mandate runs counter to the evidence submitted by religious organizations during the comment period.

177.    Thus, Defendants' issuance of the interim final rule was arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A) because the rules fail to consider the full extent of their implications and they do not take into consideration the evidence against them.

178.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

## COUNT XI
### Violation of the Administrative Procedure Act
### Agency Action Not in Accordance with Law
### *Weldon Amendment*
### *Religious Freedom Restoration Act*
### *First Amendment to the United States Constitution*

179.    EWTN incorporates by reference all preceding paragraphs.

180.    The Mandate is contrary to the provisions of the Weldon Amendment of the Consolidated Security, Disaster Assistance, and Continuing Appropriations Act of 2009, Public Law 110 329, Div. A, Sec. 101, 122 Stat. 3574, 3575 (Sept. 30, 2008).

181.   The Weldon Amendment provides that "[n]one of the funds made available in this Act [making appropriations for Defendants Department of Labor and Health and Human Services] may be made available to a Federal agency or program . . . if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions."

182.   The Mandate requires issuers, including EWTN, to provide coverage of all Federal Drug Administration-approved contraceptives.

183.   Some FDA-approved contraceptives cause abortions.

184.   As set forth above, the Mandate violates RFRA and the First Amendment.

185.   Under 5 U.S.C. § 706(2)(A), the Mandate is contrary to existing law, and is in violation of the APA.

186.   Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

### COUNT XII
### Violation of the Administrative Procedure Act
### *Agency Action Not in Accordance with Law*
### *Affordable Care Act*

187.   EWTN incorporates by reference all preceding paragraphs.

188.   The Mandate is contrary to the provisions of the Affordable Care Act.

189.   Section 1303(b)(1)(A) of the Affordable Care Act states that "nothing in this title"— i.e., title I of the Act, which includes the provision dealing with "preventive services"—"shall be construed to require a qualified health plan to provide coverage of [abortion] services . . . as part of its essential health benefits for any plan year."

190.    Section 1303 further states that it is "the issuer" of a plan that "shall determine whether or not the plan provides coverage" of abortion services.

191.    Under the Affordable Care Act, Defendants do not have the authority to decide whether a plan covers abortion; only the issuer does.

192.    The Mandate requires issuers, including EWTN, to provide coverage of all Federal Drug Administration-approved contraceptives.

193.    Some FDA-approved contraceptives cause abortions.

194.    Under 5 U.S.C. § 706(2)(A), the Mandate is contrary to existing law, and is in violation of the APA.

195.    Absent injunctive and declaratory relief against the Mandate, EWTN has been and will continue to be harmed.

### PRAYER FOR RELIEF

Wherefore, EWTN requests that the Court:

a.      Declare that the Mandate and Defendants' enforcement of the Mandate against EWTN violates the First Amendment to the United States Constitution;

b.      Declare that the Mandate and Defendants' enforcement of the Mandate against EWTN violates the Religious Freedom Restoration Act;

c.      Declare that the Mandate was issued in violation of the Administrative Procedure Act;

d.      Issue an order prohibiting Defendants from enforcing the Mandate against EWTN and other religious organizations that object to providing insurance coverage for contraceptives (including abortifacient contraceptives), sterilization procedures, and related education and counseling;

e.      Award EWTN the costs of this action and reasonable attorney's fees; and

f.      Award such other and further relief as it deems equitable and just.

Respectfully submitted this 9th day of February, 2012.

_/s/ Eric N. Kniffin_
Eric N. Kniffin, DC Bar No. 999473[2]
S. Kyle Duncan, LA Bar No. 25038
Mark Rienzi, DC Bar No. 494336

THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K St. NW, Ste. 220
Washington, DC 20007
Tel.:    (202) 955-0095
Fax:    (202) 955-0090

_Counsel for Plaintiff EWTN, Inc._
5817 Old Leeds Rd.
Irondale, AL  35210

---

[2]      Motions for _pro hac vice_ admission for all of Plaintiff's counsel will be filed within 10 days of this motion pursuant to Local Rule 83.1(b).